## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

IVERSON DAMON LANG,  )
  )
     Plaintiff,    )
  )
     v.      )     CV419-003
  )
MRS. K. BROWN, MRS. E.  )
PATTERSON, and  )
SHERIFF J. WILCHER  )
  )
     Defendants.  )

## REPORT AND RECOMMENDATION

Plaintiff Iverson Damon Lang, proceeding *pro se* and *in forma pauperis*, filed this civil rights case pursuant to 42 U.S.C. § 1983 alleging that Defendants Mrs. K. Brown, Mrs. E. Patterson, and Sheriff John Wilcher violated his constitutional rights while he was a pre-trial detainee at the Chatham County Detention Center ("CCDC").  Doc. 1 at 2-4.  Defendants have moved for summary judgment, doc. 69,[1] and Lang has responded, doc. 84.  The motion is now ripe for review.  Additionally,

---

[1] This is the Defendants' second attempt at summary judgment.  They originally filed a Motion for Summary Judgment, doc. 55, Brief in Support of Motion for Summary Judgment, doc. 56, and Statement of Materials Facts, doc. 57, which the Court administratively terminated as deficient, with leave to refile.  *See* doc. 64 at 6-8.

Lang has filed an Amended Complaint that is due for screening pursuant to 28 U.S.C. § 1915A.

## I.   BACKGROUND

In his initial complaint, Lang alleges that while he was a pre-trial detainee at the CCDC, Brown, who he identifies as the "unit clerk/mail personnel," was "going into" his legal mail outside of his presence.  Doc. 1 at 4.  He further alleges that Patterson assisted Brown in going through the mail.  *Id.*  He claims that mail sent to him from his attorney and from the Chatham County Courthouse was "constantly being open[ed]" between April 18, 2017 and August 28, 2017.  *Id.* at 5.  He further claims that when he complained, Brown instructed him that it is her "job to open all mail[ ]."  *Id.*  He named Brown and Patterson as defendants in their individual and official capacities.  *Id.* at 2.  He also named Sheriff Wilcher as a defendant in his official capacity.  *Id.* at 3.  He seeks "to be compensated to the allowable maximum" for these alleged violations.  *Id.* at 6.

The Court screened Lang's Complaint pursuant to 28 U.S.C. § 1915A, found that he had raised a potential Sixth Amendment violation of his right to counsel as a pre-trial detainee, and ordered service upon

Brown, Patterson, and Wilcher.  Doc. 11 at 2-3.  The defendants appeared by Answer, asserting various affirmative defenses, and denying that Lang's mail had been opened outside of his presence.  Doc. 23 at 1-3.

Lang subsequently filed an Amended Complaint, asserting that the incidents underlying his claims occurred in 2018, and not 2017 as he originally claimed.  Doc. 30 at 1; *see also* doc. 57-1 at 11 (Deposition of Lang) (Q: And was [correction of the date] the purpose of [the amended complaint]? A: Yes, sir, it was the correction of the date.); *but see* doc. 84 at 1-2 ("On or about [ ]April 18, 2017[ ] until [ ]August 28, 2017[ ], Defendants Mrs. K. Brown and Mrs. E. Patterson[ ] knowingly violated Plaintiff Lang['s] constitutional rights.").  In his Amended Complaint,[2] he describes two specific instances where he alleges someone interfered with his legal mail.  Doc. 30 at 1-2.

First, in February 2018, he alleges that Brown and Patterson opened and read some affidavits sent to him by his wife.  *Id.*  He does not allege that his wife is an attorney.  *Id.*  Then, in September 2018, he

---

[2] In his Amended Complaint, doc. 30, Lang also asks the Court for assistance in requesting documents and information from defendants.  The Court made it clear to Lang on several occasions that he must abide by the Federal Rules of Civil Procedure, which require him to serve discovery requests on the defendants, and not the Court.  *See*, e.g., doc. 47; *see also infra* pp. 7-8.

alleges that he mailed a motion to his attorney along with a letter, and the letter was returned but the motion itself had been removed from the envelope. *Id.* at 2. Based on CCDC policy at that time, Lang's outgoing letter would have been "collected... by the Wing Officer and forwarded to Central Lobby." Doc. 56-2 at 10. It would then have been picked up by the United States Postal Service ("USPS"). *Id.* Upon its return by the USPS, it would have been delivered to the Clerical Assistant and then routed to Lang's individual housing unit. *Id.* at 9. There, the Unit Manager would have been responsible for ensuring that it was inspected for contraband, a responsibility that is typically assigned to the Unit Clerk. *Id.* Under the policy, this inspection should have been conducted in front of Lang as the letter was correspondence with his attorney. *Id.*

The parties agree that the CCDC policy regarding inmates' legal mail is that the legal mail should be opened only in the presence of the inmate, and that the inspecting officer is only to inspect the mail for contraband and is specifically not to read the mail. *Compare* Doc. 70 at 3 *with* doc. 85 at 2. Lang concedes that the only individuals at CCDC who he alleges opened his protected mail are Brown and Patterson. Doc. 57-1 at 15; *see also* doc. 85 at 2 ("Plaintiff alleges only that defendants K.

4

Brown and E. Patterson opened and read his legal mail outside of plaintiff's presence."). Brown and Patterson dispute that they opened and read Lang's protected legal mail outside of his presence in violation of CCDC policy. *Id.*

Brown's sworn statement is that she has never opened and read any mail to Lang from his attorney or the courts, or any other legal mail. Doc. 56-1 at 1. She also attests that she never opened or read any letter from Lang's wife or any affidavit contained within such letter. *Id.* at 1-2. She is familiar with the process for screening incoming mail, and attests that she followed that process with the returned mail that Lang attempted to send to his attorney. *Id.* at 2. In response, Lang conclusorily asserts that "Defendant Brown <u>did</u> open the returned letter that plaintiff attempted to send out." Doc. 85 at 2 (emphasis in original). He attempts to support this statement with reference to Brown's affidavit, *id.*, which does not provide the necessary support. *See* doc. 56-1 at 2, paras. 8-9 (stating that Brown did not tamper with or change the condition of the returned envelope, and that it was torn when she received it). Assuming his letter was opened prior to it being returned to him, he does not point to

anything in the record to substantiate his claim that Brown is the person who opened his letter.  Doc. 85 at 2.

As for Patterson, Lang contends that she was involved in the screening of his wife's correspondence to him that contained affidavits. *See* doc. 30 at 1-2.  He concludes that she must have been involved with opening and reading the mail from his wife, because that is the only way she would have known the contents of the letter.  *Id.*  He also contends that Patterson must have done so improperly, because her efforts to get the returned affidavits back from Lang's wife and delivered to Lang was, in his eyes, a cover up.  *Id.*  Lang does not allege that Patterson was involved in any way with the alleged opening of his returned letter to his attorney.  *See* doc. 85 at 2 (alleging that Brown opened the letter, not Patterson).

Throughout his deposition, which he relies on in his Statement of Material Facts, Lang attempts to prove that Brown and Patterson opened and read his legal mail by referring to "camera footage."  Doc. 85 at 2 (citing to Lang's deposition testimony, where he contends that his evidence is "the camera footage" and admitting that he has no other direct evidence that Brown removed the motion or read the motion).

However, this camera footage is not in the record.  *See generally* docket. While Lang attempted to request this information through the Court, *see* doc. 13, the Court denied his request and instructed him to serve his discovery request to the defendants by mailing the request to their attorney, *see* doc. 22.  *See also* doc. 39 ("Motion Requesting Subpoena" for, among other things, camera footage); doc. 40 (Order denying Lang's request for a subpoena, observing that the Motion Requesting Subpoena was not certified as having been served on defendants, reminding Lang that he must follow the Federal Rules of Civil Procedure, and describing the condition precedent of attempting to informally resolve discovery disputes prior to filing a motion to compel); doc. 41 ("Motions of Discovery/Exhibits" seeking, among other things, camera footage); doc. 42 (Order denying Lang's improper request for discovery, noting that it was not served on defendants, and reminding Lang that all discovery requests must be served on defendants and that the Court will not intercede unless the defendants unreasonably refuse to respond, and then only after the parties meet and confer to attempt to resolve any discovery issues); doc. 46 ("Motion Requesting Subpoena on the Defendants" seeking, among other things, camera footage); doc. 50 (Order

denying Lang's redundant discovery motion, and giving him one final chance to conduct himself in accord with the Federal Rules of Civil Procedure, including serving defendants, not the Court, with discovery requests).  To the extent Lang ever properly served a request on Sheriff Wilcher for the camera footage, that footage is not in the record, and Lang never raised a Motion to Compel or otherwise notified the Court that the defendants were withholding information or otherwise refusing to respond.  *See generally* docket.

In addition to his claims about his mail, Lang filed another Amended Complaint (the "Second Amended Complaint") where he claims mental and emotional distress from the lack of support from CCDC personnel to help him support his claim.  Doc. 36 at 1.  He also alleges that he was assaulted by a gang member, although he does not allege that this attack was the result of any action or inaction by jail officials.  *Id.* at 1-2.  He further asserts that Chatham County officers went through his legal papers and threw them all over his floor during a search of his cell.  *Id.* at 2.  He does not contend that the legal papers were confiscated or thrown away.  *Id.*  Again, he asks the Court to assist him in his discovery efforts, *see*, *e.g.*, *id.* at 2 ("I ask the Court [to] issue a subpoena

for my medical records...;"  "I would like to request that the court [
]subpoena[ ] [ ]L.T. Murphy['s] cell phone as evidence too. . . ."), in
contravention of this Court's prior orders.  *See*, *e.g.*, docs. 22, 35.  He also
seeks $280,000 "from the loss of [his] family and all our property."  Doc.
36 at 3.  Because Plaintiff is a prisoner seeking redress from employees
of a governmental entity, his Second Amended Complaint, which raises
claims distinct from those in his already-screened Complaint, must be
screened before it may proceed further.  *See* 28 U.S.C. § 1915A.  The
Court will screen the Second Amended Complaint, and then address the
Defendants' Motion for Summary Judgment.

## II.    SCREENING OF LANG'S SECOND AMENDED COMPLAINT

### A.    Standard for Screening

Under 28 U.S.C. § 1915A(a), the Court "shall review" "a complaint
in a civil action in which a prisoner seeks redress from a governmental
entity or officer or employee of a governmental entity." 28 U.S.C. §
1915A(a).  Lang is a prisoner seeking redress against three governmental
employees, so his Second Amended Complaint must be reviewed.

"On review, the court shall identify cognizable claims or dismiss the
complaint, or any portion of the complaint," if it "is frivolous, malicious,

or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b). This standard of review is identical to the standard used by the Court to govern dismissals pursuant to Fed. R. Civ. P. 12(b)(6). *See Wright v. Miranda*, 740 F. App'x 692, 694 (11th Cir. 2018). However, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and punctuations omitted).

To state a claim, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This is required because a complaint must "give the defendant fair notice of what the [ ] claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citations omitted). In short, the court must dismiss a complaint that fails "to state a claim for relief that is plausible on its face." *Id.* at 570. Further, under 28 U.S.C. § 1915A, courts must dismiss claims that are "based on indisputably meritless legal theory" or "whose factual contentions are clearly baseless." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001).

## B.    Factual Allegations

Lang asserts in his Second Amended Complaint that Patterson was rude to him upon learning of the pendency of this lawsuit, and that she refused to give him copies of documents that he requested for his legal case.  Doc. 30 at 1.  He also claims that he is emotionally and mentally distressed from the lack of support from the counselors and the law library to help him support his claims.  *Id.*  He further claims that he was assaulted by an alleged gang member, resulting in stiches.  *Id.* at 2.  He does not allege any action or inaction on the part of any CCDC official that resulted in this prisoner-on-prisoner assault.  *Id.*  He then alleges that CCDC officers entered and searched his cell, went through his legal papers, and left them scattered on the floor.  *Id.*  Finally, he claims that he is mentally and emotionally distressed from being in lockdown in his cell for 18 hours per day, causing him difficulty in studying for this case. *Id.*

## C.    Federal Rule of Civil Procedure 15

Lang filed his initial Complaint on January 7, 2019.  Doc. 1.  After screening, the Complaint was served on the defendants.  *See* docs. 11, 14 (waiver of service as to Patterson), 15 (waiver of service as to Wilcher)

and 16 (waiver of service as to Brown).  They answered on March 20, 2019.  Doc. 23.  Lang filed the Second Amended Complaint on May 20, 2019.

Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party can amend a pleading once as a matter of course within 21 days after serving it, or within 21 days of the opposing party serving a responsive pleading. Rule 15(a)(2) states "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).  Lang's Second Amended Complaint was his second attempt to amend his Complaint, *see* doc. 30, and was filed more than 21 days after the defendants filed their Answer, *compare* doc. 23 (filed March 20, 2019) *with* doc. 36 (filed May 20, 2019).  Lang's Second Amended Complaint is unauthorized, as he did not have defendants' written consent or the court's leave to file the amendment.  A *pro se* litigant is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.  *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).  The fact that the Second Amended Complaint was unauthorized, therefore, might warrant simply disregarding the novel claims it asserts.

12

### D.   Analysis of Plaintiff's Claims

Even if Lang's Second Amended Complaint were properly before the Court, it fails to state a claim.  His allegations as to Patterson failing to help him obtain copies of legal paperwork, doc. 36 at 1, his allegation that the counselors and the law librarian are generally unhelpful as it relates to his legal proceedings, *id.* and his allegation that he is not afforded sufficient time to study his case, *id.* at 2, can be liberally construed as allegations that Lang has been denied meaningful access to the courts.  Lang has already attempted to make this claim once before this Court.  *See Lang v. Wilcher*, CV419-143, 2020 WL 130297 (S.D. Ga. January 10, 2020) report and recommendation adopted, 2020 WL 762839 (S.D. Ga. Feb. 13, 2020).  As the Court informed Lang there, while prisoners and detainees proceeding *pro se* have a right to meaningful access to the courts, a deprivation of this right requires an actual injury to be suffered.  *Id.* at *1.  To state a claim, Lang must have alleged that the denial of access to legal resources prejudiced him in a criminal appeal, post-conviction matter, or in a § 1983 claim.  *Id.*  Lang's Second Amended Complaint does not allege any unfavorable outcome in a legal proceeding because of any alleged restrictions or general unhelpfulness.  *See* doc. 36

at 1-2. These claims, therefore, should be dismissed. *See Bass v. Singletary*, 143 F.3d 1442, 1446 (1998).

Lang's claim that jail officials entered his cell and scattered his legal papers across the floor is subject to a similar fate. To the extent he claims that this search impacted his access to the courts, he again fails to allege an actual injury to support the claim. Moreover, to the extent he claims a violation from the search itself, "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). This claim should also be dismissed. *See Lee v. Hudson*, 346 Fed. App'x 381, 384 (11th Cir. 2009) (finding dismissal was proper in prisoner's claim that cell was searched and legal documents were confiscated).

As to Lang's claim that he was assaulted by a fellow prisoner and alleged gang member, his failure to allege that any CCDC official was in any way involved in this assault is fatal to his claim. A prison official's deliberate indifference to a known, substantial risk of serious harm to a pre-trial detainee violates the Fourteenth Amendment. *Keith v. DeKalb County, Georgia*, 749 F.3d 1034, 1047 (11th Cir. 2014). To state a claim for deliberate indifference, Lang must allege that a jail official had (1)

14

subjective knowledge of a risk of serious harm, (2) disregarded the risk, (3) by conduct that was more than gross negligence. *Id.* Lang has not alleged **any** conduct on the part of **any** CCDC official that satisfies this standard. Doc. 36 at 2. This claim, too, should be dismissed.

### E.    Abandonment

Even if Lang's Second Amended Complaint were properly before the Court, and even if it stated a claim that survived screening, Lang has abandoned those claims. Lang confirmed during his deposition that the alleged opening of his mail is the reason for his complaint. Doc. 57-1 at 14 (Q: Is [the opening of mail] the main reason for your complaint? A: It's my mail, period.); *see also id.* at 21-22. He did not raise any of these claims when arguing against the Defendants' Motion for Summary Judgment. *See* docs. 84 & 85. *See Boone v. City of McDonough*, 571 Fed. App'x 746, 751 (11th Cir. 2014) (claims raised in pleadings but not relied upon at summary judgment are deemed abandoned).

## III.  ANALYSIS OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.    Summary Judgment Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. *See id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

If the moving party discharges his burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. *Anderson*, 477 U.S. at 257. Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1033-34 (11th Cir. 1981); *see also Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990) ("A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."). "There is no genuine issue of material fact if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Jones v. Gerwens*, 874 F.2d 1534, 1538 (11th Cir.1989).

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee*

*County*, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 616 (11th Cir. 2007)).  However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Id.* (emphasis and citations omitted).

## B.    Eleventh Amendment Immunity

Lang has named Chatham County Sheriff John Wilcher as a defendant only in his official capacity.  *See* doc. 1 at 3.  Sheriff Wilcher is responsible for developing and setting the procedures by which the CCDC operates, including the mail policy.  Doc. 56-2 at 2.  He argues that he is immune from suit under the doctrine of sovereign immunity[3] and the Eleventh Amendment.  Doc. 71 at 6-9.

---

[3] In addition to his Eleventh Amendment argument, Sheriff Wilcher also argues that he is entitled to sovereign immunity under Georgia state law.  However, "state sovereign immunity has no application in federal court in § 1983 cases.  Instead, the Eleventh Amendment grants immunity to states from suits in federal courts." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1340 at n. 26 (11th Cir. 2003); *see also Jenkins v. Corizon Health, Inc.*, 2020 WL 5492543 at *5-6 (S.D. Ga. September 10, 2020)

"The Eleventh Amendment protects a State from being sued in federal court without the State's consent." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). "Congress, in passing § 1983, did not intend to override the immunity guaranteed to the states by the Eleventh Amendment." *Presnell v. Paulding Cty., Ga.*, 454 F. App'x 763, 766 (11th Cir. 2011) (internal citations omitted). Georgia has not waived its Eleventh Amendment immunity. *See* O.C.G.A. § 50–21–23(b) ("The state does not waive any immunity with respect to actions brought in the courts of the United States."); *see also Robinson v. Ga. Dep't of Transp.*, 966 F.2d 637, 640 (11th Cir.1992) (noting that "a state waives its Eleventh Amendment immunity only if there is an unequivocal indication that the state intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment").

"Sovereign immunity under the Eleventh Amendment applies both to states and to those entities that are considered 'arms of the state.' " *Nicholl v. Board of Regents of University System of Georgia*, 706 Fed.

(analyzing Georgia's state doctrine of sovereign immunity to determine its applicability to state tort claims against Sheriff Wilcher, and the Eleventh Amendment to determine its applicability to § 1983 claims against Sheriff Wilcher). Since Lang asserts only a § 1983 claim against Sheriff Wilcher in this case, the Court analyzes only the Eleventh Amendment immunity argument raised by Sheriff Wilcher.

App'x 493, 495 (11th Cir. 2017).  Moreover, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted).  Sheriff Wilcher was sued in his official capacity, *see* doc. 1, so the pivotal question is whether the Chatham County Sheriff is considered an arm of the state.

To determine whether Sheriff Wilcher is entitled to Eleventh Amendment immunity, the Court must first determine "the particular function in which the sheriff was engaged when taking the actions out of which liability is asserted to arise,"  and then "determine whether the defendant is an arm of the State in his performance of the function by considering four factors: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity."  *Lake v. Skelton*, 840 F.3d 1334 at 1337 (11th Cir. 2016).

Although Sheriff Wilcher makes the conclusory assertion that he "functions as an arm of the state," doc. 71 at 9, he does not provide the Court with sufficient information to conduct the four-factor analysis.

This omission is particularly notable since this is his second attempt at summary judgment, after instruction from the Court that his initial attempt was woefully deficient. *See* doc. 64. Although he correctly points out that courts have found Georgia sheriffs to function as an arm of the state when providing food to inmates, *Lake*, 840 F.3d at 1342-43, providing medical care to inmates, *Brooks v. Wilkinson County*, 393 F. Supp. 3d 1147, 1160 (M.D. Ga. 2019) and using force against inmates, *Manders*, 338 F.3d at 1310, he does not point to any precedent finding a Georgia sheriff to be acting as an arm of the state when setting the mail policy for the county jail. *See* doc. 71 at 9. Although one District Court in Georgia has gone so far as to say that "Eleventh Amendment precedent in this Circuit has evolved to provide an almost insurmountable wall protecting Georgia sheriffs sued in their official capacities for violating the federal constitutional rights of county jail detainees," *Palmer v. Correct Care Solutions, LLC*, 291 F. Supp. 3d 1357, 1360 (M.D. Ga. 2017), nevertheless, the Sheriff still bears the burden of demonstrating that he acts as a state actor when setting the legal mail policy at the CCDC, the "particular function in which [he] was engaged when taking the actions out of which liability is asserted to arise" in this case. *Lake*, 840 F.3d

1337; *see also Manders*, 338 F.3d at 1319 ("Although the specific duties the State assigns to sheriffs shed considerable light on the character of the sheriff's office, we must focus on the nature of the particular function at issue here. . . .").

Moreover, the Chatham County Sheriff's role in running the county jail is distinct from other sheriffs in the state because of its unique relationship with Chatham County under an 1881 amendment to Savannah's City Charter. *See Ajibade v. Wilcher*, 2018 WL 555752 at *2-4 (S.D. Ga. January 25, 2018). "[T]he 1881 Charter Amendment grants Chatham County considerable authority to 'make proper rules and regulations' in its control of the jail." *Id.* at *6. Although the Court found in *Ajibade* that the Chatham County Sheriff functions as an arm of the state *when setting the use-of-force policy at the jail*, *id.* at *8, that does not necessarily mean that the Sheriff acts as an arm of the state when setting the inmate-mail policy at the jail. Analysis of the four factors established by the Eleventh Circuit is required to determine whether the reasoning in *Ajibade* extends to the mail policy, or if another result is required.

Unfortunately, Sheriff Wilcher has provided only minimal information to permit the Court to conduct the appropriate analysis. *Id.* Other than his reference to the three cases that deal with providing food, providing medical care, and use of force, *see supra* p. 21, he offers only two points in support of his argument that he should be considered an arm of the state. First, he contends that Georgia law subjects sheriffs to control by the legislature, and not by the county. Doc. 71 at 9. Second, he contends that the Georgia Constitution expressly prohibits counties from controlling a sheriff's office. *Id.* However, he does not address the 1881 Charter Amendment and its impact on these contentions, and he does not address these contentions in the context of setting the mail policy. He does not point to any fact in the record that supports his contention that he should be considered an arm of the state. *See* doc. 71 at 9, doc. 70 at 3. His submissions continue to fall short of what is required, and he has not met his burden on summary judgment. *See* doc. 64 (reminding defendant that as the party seeking summary judgment he bears the initial responsibility of informing the Court of the basis for his motion, and of his obligation to support his motion with a statement of material facts supported by citation to the record).

Therefore, summary judgment on sovereign immunity grounds as to the claims against Defendant Wilcher should be **DENIED.**

## C.   Qualified Immunity

Defendants next argue that, "to the extent that Plaintiff's Complaint states any cause of action against deputies of the Chatham County Sheriff's Office, his claims are barred by the doctrine of qualified immunity."  Doc. 71 at 11.  Defendants do not actually identify Brown and Patterson as sheriff's deputies in their brief – in fact, Brown and Patterson are not specifically referred to at all in this section of the brief. *Id.*  Nevertheless, while defendants' submissions are not entirely clear, they have provided sufficient evidence that Brown and Patterson work at the CCDC. *See* doc. 70 at 2 (identifying Brown as an "administrative assistant at the CCDC" and Patterson as a "unit counselor at the CCDC").

To successfully carry their burden of showing that they are entitled to qualified immunity, the defendants must first show that they were acting within the scope of their discretionary authority at the time of the alleged wrongful acts. *Grochowski v. Clayton County, Georgia through Turner*, 961 F.3d 1311, 1319 (11th Cir. 2020); *see also Keith v. DeKalb County, Georgia*, 749 F.3d 1034, 1048 at n. 45 (11th Cir. 2014) ("As a

threshold matter, a defendant must demonstrate that he was acting within the scope of his discretionary authority at the time of the alleged constitutional violation."). The burden then shifts to the plaintiff to show (1) that the defendants violated a constitutionally protected right; and (2) that the right was clearly established at the time of the misconduct. *Grochowski*, 961 F.3d at 1319. "When a defendant moves for summary judgment based on the doctrine of qualified immunity, the court must view the facts in the light most favorable to the plaintiff." *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 994 (11th Cir. 1995).

As the defendants correctly point out, the Eleventh Circuit has found that jail personnel, including an administrative assistant, act within their discretionary authority when screening inmates' mail. *See Al-Amin v. Smith*, 511 F.3d 1317, 1324 (11th Cir. 2008) (finding that the warden and his administrative assistant were acting within their discretionary authority when the administrative assistant allegedly repeatedly opened inmates' attorney mail). Although defendants go down an unnecessary path of analyzing Georgia law on discretionary and ministerial acts, and incorrectly argue that Lang is required to show malice to prevail, *see* doc. 71 at 10-11, they have ultimately carried their

burden of demonstrating that they acted within their discretionary authority when screening Lang's mail. *Al-Amin*, 511 F.3d at 1324.

Because the defendants have demonstrated that they were engaged in a discretionary function at the time of the allegedly unlawful act, the burden shifts to Lang to demonstrate that (1) the defendants violated a constitutional right, and (2) the constitutional right was clearly established at the time of the alleged wrongful act. *Council v. Sutton*, 366 Fed. App'x 31, 35 (11th Cir. 2010). The Court can use its discretion in determining which of the two prongs to address first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Inmates have a constitutionally protected right to have their properly marked attorney mail opened in their presence. *Al-Amin v. Smith*, 511 F.3d 1317, 1331 (11th Cir. 2008). This right arises under both the First Amendment and the Sixth Amendment.[4] The Eleventh Circuit has determined that a prisoner has a First Amendment right to use the mail to communicate confidentially with his attorneys about his case.

---

[4] Lang also asserts that the CCDC officials violated his Fourth Amendment rights. *See* doc. 1 at 3. However, "the Supreme Court has concluded that 'the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.'" *Ford*, 534 Fed. App'x at 826 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)).

*Ford v. Hunter*, 534 Fed. App'x 821, 824 (11th Cir. 2013) (citing *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008). As the Court said in *Al-Amin*, "prisoners' use of the mail to communicate with their attorneys about their criminal cases may frequently be a more important free speech right than the use of their tongues." *Al-Amin*, 511 F.3d at 1333-34. Therefore, prison officials violate the constitution when their practice of opening or reading attorney correspondence "sufficiently chills, inhibits, or interferes with a plaintiff's ability to speak, protest, and complain openly to his attorney so as to infringe his right to free speech." *Ford*, 534 Fed. App'x at 824 (internal quotes omitted). Additionally, because he was a pre-trial detainee at the time of the alleged violations, Lang also had a Sixth Amendment right to counsel, which includes communication with his attorney as "a vital component of the right to counsel in pending criminal prosecutions." *Taylor v. Stewart*, 532 F.2d 462, 472 (5th Cir. 1976); *see also* doc. 11 at 2-3.

Lang does not dispute that the CCDC, under Sheriff Wilcher, has a policy in place that prohibits jail officials from opening an inmate's legal mail outside of the inmate's presence, and that the inspecting officer is only to inspect the mail for contraband and not read the mail. Doc. 70 at

3; doc. 85 at 2; *see* Fed. R. Civ. P. 56(e).  He does not allege that Sheriff Wilcher personally participated in the improper opening of his mail.  *See* doc. 1, doc. 30, doc. 84, doc. 85.  He has not met his burden in showing the Sheriff Wilcher violated his constitutional rights.  *See Keith v. DeKalb County, Georgia*, 749 F.3d 1034, 1048 (11th Cir. 2014) (finding it "well-established" in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability; to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation).

As to Brown and Patterson, Lang's complaint centers around two different instances where he claims they opened his legal mail outside of his presence.  The first incident involves mail to Lang from his wife.  Doc. 30 at 1-2; doc. 57-1 at 29-33.  According to Lang, his wife mailed him some affidavits, but they were returned to his wife.  Doc. 57-1 at 31. Ultimately, Patterson assisted Lang in getting the affidavits from his wife.  Doc. 57-1 at 31-32.  Lang does not allege that his wife is an attorney. *See* doc. 30 at 1-2.  Lang has pointed to no evidence in the record to show

that the letter was properly marked as attorney mail and therefore constitutionally protected or subject to the CCDC's policy. *See* doc. 85; *see also* doc. 56-2 at 5 (CCDC mail policy identifying "legal mail" as correspondence from the courts, an attorney, government officials, officials of the facility, parole authorities, and the commander of the grievance system).

The second piece of mail that Lang contends the defendants improperly opened is a letter that he mailed out to his attorney that was returned to him because of an incorrect address. Doc. 30 at 2; doc. 57-1 at 39-40. Brown and Patterson attest that they did not open this returned letter. Doc. 70 at 2. According to Brown's affidavit, when she received the returned mail it had a tear in it. Doc. 56-1 at 2. She contends she did not tamper with the envelope, but instead placed it in Lang's mail slot. *Id.* In response, Lang states that she *did* open the returned letter. Doc. 85 at 2. However, he points to no evidence in the record to support this conclusory statement. *Id.* (citing to Brown's own sworn statement that indicates she *did not* open the letter). Even if Lang has marshalled sufficient evidence to show that the letter was in fact opened, he has not pointed to sufficient evidence that ***Brown*** is the one who opened the

letter.  He attempts to draw a line connecting the opened envelope and Brown, because he contends Brown argued with him about the envelope. *See* Doc. 30 at 2.  However, by the time the envelope was returned to Lang, multiple people within the CCDC and the USPS had handled it. Brown acknowledges that it was torn when she received it.  Doc. 56-1 at 2.  There is simply no evidence to support the assertion that Brown opened the envelope, especially in the face of her affirmatively denying, under oath, that she did.  Lang has not produced any actual evidence to support his allegations that Brown or Patterson opened any protected mail.  "Unsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment." *Howard v. Memnon*, 572 Fed App'x 692, 695 (11th Cir. 2014) (per curiam) (citing *Bennett v. Parker*, 898 F.2d 1530, 1532-34 (11th Cir. 1990)).

To the extent he attempts to rely on video evidence that is not in the record, *see* doc. 85 at 2 (referring to his deposition testimony about "camera footage"), the Court explained multiple times that he was required to request this footage directly from the defendants using the Federal Rules of Civil Procedure.  *See supra* p. 7-8.  That he chose not to

pursue potential discovery issues during the designated discovery period does not excuse him from compliance with the rules governing discovery and summary judgment. *See Moon* 863 F.2d at 837; *see also Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) ("[A]lthough we are to give liberal construction to the pleadings of pro se litigants, 'we nevertheless have required them to conform to procedural rules.' ").

Lang has failed to meet his burden in showing that any of the named defendants violated a constitutional right, and therefore the defendants' Motion for Summary Judgment based on their qualified immunity should be **GRANTED**. *See Huebner v. Bradshaw*, 935 F.3d 1183, 1191 (summary judgment appropriate for defendant on qualified immunity grounds where plaintiff fails to show a violation of a constitutional right).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Second Amended Complaint should be **DISMISSED** pursuant to 28 U.S.C. § 1915A.   Doc. 36. Defendants Keoiness Brown, Elaine Patterson and Sheriff John T.

Wilcher's Motion for Summary Judgment should be **GRANTED, in part, and DENIED, in part.**  Doc. 69.

This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.,*

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED and RECOMMENDED**, this 19th day of July, 2021.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA